of America, Ms. Sally Paye for the Petitioner Appellant. Good morning and may it please the Court, my name is Sally Paye and I represent the Appellant, Mr. David MacLloyd. I would like to reserve three minutes of time for rebuttal. The District Court should have granted Mr. MacLloyd an evidentiary hearing on his claim that his lawyer, Thomas Loeb, provided ineffective assistance of counsel by failing to fully advise him about a favorable plea offer. Under Section 2255B, an evidentiary hearing is mandatory unless the motion and the files and the record of the case conclusively show that the prisoner is entitled to no relief. And here Mr. MacLloyd offered more than enough by way of specific factual allegations and supporting evidence to meet that lenient standard. Nothing conclusively shows that Mr. MacLloyd cannot prevail. Now with respect to deficient performance, the record doesn't reflect, much less conclusively show that Loeb provided the assistance that the Sixth Amendment requires in these circumstances. In the plea bargaining context, a lawyer must not only communicate the plea offer's terms and first of all the fact that a plea offer had been made, but must also give legal advice and guidance about the likely consequences of accepting the plea versus proceeding to trial. Could you slow down just a little bit? Of course, Your Honor. That's good. Good talk, but I'm not quite hearing all of it. But before the court, didn't your client state on the record that the plea had been discussed with him and that he had information and knowledge about the plea? I'm aware that he later says he never saw the written plea agreement, that it was never communicated to him, but isn't that contrary to his statements before the court during the January hearing? Well, Mr. MacLloyd's statements during the January hearing are not inconsistent with his allegation that Mr. Loeb didn't provide all of the... How so? Well, under the Sixth Amendment, a lawyer must not only advise about the terms, but must also explain, for example, here Mr. Loeb should have told Mr. MacLloyd that the sentence that was recommended under the plea agreement was for 11 to 14 years with the possibility of cooperation, which could have made it less than 10 years, and that the sentence had apparently been calculated on the basis of a quantity of cocaine, which was about 5 to 15 kilograms. But Mr. MacLloyd had in the back of his mind somewhere something about a five-year sentence, and there's some evidence in the record that he was not really interested in an 11 to 14 year until after he got hit with a 30-year sentence. He wasn't really interested in an 11 to 14 year sentence. I guess I think that there are questions about whether or not Mr. MacLloyd really knew, or if this is sort of hindsight remorse. Yes, Your Honor, well, the question... One of the other pieces of information that Mr. Loeb should have told Mr. MacLloyd, and there's no evidence in the record to prove that he did, was that if Mr. MacLloyd had proceeded to trial, the government would probably have been able to prove that he was responsible for 150 to 800 kilograms of cocaine, which would have made the likely sentencing range more on the order of 30 years to life. And had Mr. MacLloyd known about that at the time that the government had offered him the 11 to 14 year plea, I think it's perfectly plausible that he would have accepted it. It's difficult to imagine a rational, properly advised defendant rejecting an 11 to 14 year plea. So it's not just that he didn't know about the plea, he didn't know about the full risk. His attorney did not cover him about his full exposure. Yes, precisely, Your Honor. And there's nothing in the January 13 transcript to reflect that Mr. Loeb did advise him of all those risks. Getting back to the question Judge Donald asked you, is your client in effect stopped from now making this claim? Because the district court asked whether Mr. Loeb had reviewed the agreement with MacLloyd and whether he had an opportunity to discuss the agreement with Loeb. And after consulting with his attorney, MacLloyd answered each of those questions in the affirmative, didn't he? At the hearing? Yes. At the hearing, Mr. MacLloyd provided yes or no questions to the district court, yes or no answers to the district court. Now the question is, is he bound by that? Are you trying to say, no, despite him saying that, that isn't really what happened? What I'm saying is that the questions that the district court asks and Mr. MacLloyd's answers to them don't reflect that Mr. Loeb, in fact, advised Mr. MacLloyd of all of the relevant information as required by the Sixth Amendment. Well, I mean, if you've got some authority, you can cite us to say that despite his answering to the district court that he had discussed the agreement with his lawyer and all that and he reviewed the agreement with his attorney, that he's not bound by it. Well, for example, there's no particular case that's exactly on point in these situations, but the Blackledge case by the Supreme Court, that's Blackledge against Allison, states that the record of the plea hearing isn't insurmountable and specific factual allegations that aren't contradictory to the record can overcome the statements made on the record. When you say not contradictory to the record, if part of the record is that you have discussed it with your attorney and understand it, isn't that somewhat contradictory to saying that we didn't adequately understand it or are you trying to wiggle through the phrase as something like adequately or fully? Well, the question before this court is whether Mr. Loeb fully advised Mr. MacLloyd of the agreement. Here, I think the district court itself was making inquiries of Mr. MacLloyd on the record and Mr. MacLloyd did answer yes to those questions, but again, the relevant question is whether the record conclusively shows that Mr. Loeb provided all of the advice. We have to judge, you might say, whether looking carefully at what he admitted to in court, does that conclusively close all the avenues of not being fully informed? Is that really the issue? Yes, that's really the question and again, the standard under 2255B is quite lenient and as this court has recognized time and again, it's only if the petitioner's allegations are inherently incredible or contradicted by the record that a hearing is not required. Let's assume that you're right, that the judge should have allowed an evidentiary hearing, all right, but then you also have to show that your client was prejudiced by the denial of evidentiary hearing and here, what about the fact that he had had numerous plea offers made to him, he had rejected them all, that maybe there's an inference that he was really holding out for a five-year deal, therefore he would, no matter, even if whatever his lawyer did or didn't tell him about the 11 to 14-year offer, he wouldn't have accepted it anyway. Well, that question is a question that would be appropriately resolved at an evidentiary hearing and here, again, the question is simply whether Mr. McLeod was prejudiced by his lawyer's failure to tell him about this 11 to 14-year plea deal when Mr. McLeod was, in fact... Okay, but let me stop you there a second though because using the phrase failure of his lawyer to tell him about the deal, as I understand it, even if it was just a few minutes before, he was told about the 11 to 14-year nature of it because that's what was discussed in court, right? We had the previous deal for 14 to 17 that he had rejected and so it wasn't that this 11 to 14 deal, you know, went in a drawer and never got to him, that's what the hearing was about. Yes, Your Honor. I should have been more precise. Okay. I should have said that it was that the lawyer didn't fully advise him. Okay, so he had the 11 to 14, he knew those numbers, 11 to 14, but the things that he quote didn't know about weren't those sort of the same things that were at issue in the earlier deal, that is the fact that he could get a really big sentence, so he should have had that background from the lawyer previously or is that not in the record? Just to clarify, which deal are you... Well, I'm sorry, I was referring, you made a point and a legitimate point that if you reject the deal and go to trial, they may hit you with a much larger amount and therefore you may get, you know, 30 years. Yes. All right. I'm asking, that's not a new fact, that's a fact he would have been advised when the previous deals were offered and rejected. The previous deal was, is not in the record. I think Mr. McLeod may have been under the impression that he was going to get a five-year deal, but I don't think there's anything to corroborate that. Well, I'm sorry, I thought there was, and tell me if I'm wrong, I thought there was clearly a previous offer at 14 to 17. Your Honor, that was after the 11 to 14 year plea. Afterward? Yes, it was after the second superseding indictment, that was in May. But why would you offer 14 to 17 if he's already rejected 11 to 14? Maybe that's why I got it wrong. Maybe the government was, I don't know, but perhaps the government was hoping for, well. Good point. Go ahead. So, yes, there's nothing in the record to show that Mr. McLeod did know or was told by his lawyer. So the 11 to 14 was the first plea deal offered? The first plea offer in the record, as far as I'm aware. Okay. So is it your position also that this fee issue, the failure to satisfy the fee or something with the first lawyer, impacted their communications about the plea deal and the exposure risk? If I understand Your Honor's question correctly, I certainly think that there's a possibility that a fee dispute may have been. And that's part of what you want to bring out, part of what you thought would be addressed in this hearing. Yes, Your Honor. That he should have gotten, okay. Yes, the hearing could address, for example, the communication difficulties between Mr. McLeod and his lawyer, Mr. Loeb, the possibility that Mr. Loeb was holding information in order to extract $15,000 from Mr. McLeod. But again, those are all issues to be resolved at an evidentiary hearing. And to emphasize, the relief that Mr. McLeod is seeking here today is extremely narrow. Mr. McLeod's not asking this court to grant him habeas relief at this stage of the proceedings. The question is, rather, simply whether the district court should have conducted an evidentiary hearing so that Mr. McLeod could develop the factual record on his ineffective assistance of counsel. So what are you asking for us to do, to reverse and just send it back with an instruction for the district court to have an evidentiary hearing? Yes, Your Honor. And the standard for obtaining such a hearing is extremely lenient, as this court has recognized on numerous occasions. If there are no further questions, I'll reserve the remainder of my time for rebuttal. Thank you. Good morning, Your Honors. Patricia Gaedeke for the United States. The district court is not required to hold an evidentiary hearing on a 2255 motion if the allegations are inherently incredible or conclusively contradicted by the record. Here we submit that the allegations of the petition were conclusively contradicted by the record. How can we say, though, that the allegation of failure to advise the defendant of the risk of exposure, like up to 30 years, was contradicted by something in the record? Because the allegation in the original habeas petition was that his attorney told him there was an offer for 11 to 14 years. But he says he had previously rejected an offer for 10 years because he thought he had a promise of five years based on something his brother's attorney had told him. And even if I assume that that's absolutely true, that still doesn't address the point that I made, which is we don't know whether counsel counseled him that you have the risk of getting nailed with 30 years if this goes wrong. And that's part of the critical information that the defendant has to be counseled about in that plea process, not just the elements of the deal, but the broader exposure. We don't know at that point in time whether his risk was 30 years. Under the statute, you don't? Well, he knew what the statutory max was. He had been arraigned. He knew what the statutory max was. The max was actually life in prison, wasn't it? Right. There's no question about that. The question is, what was his guidelines exposure at that time? Right. And we don't know that he knew about the possible enhancement that would get him to the 30. And that's why I say, based on what you told me, how can we say that this is contradictory or inconsistent with the record? The district court asked him if he understood he was exposed to a sentence of 135 to 168. And he said yes. The district court asked him if he had reviewed the proposed Rule 11 agreement with his attorney. And it was clear from the transcript that everyone in that courtroom had a written Rule 11 agreement there. They were not talking about an oral plea. Even though apparently the lawyer had not ... I mean, at least if we take his statement, and I take it it's not contradicted by something in the record, that the lawyer only told him about it as they walked into court. He says the lawyer only told him about it as he walked into court. Nobody else says explicitly the contrary in the record, do they? Well, yes, he says something explicitly contrary in the record. Which is what? Which is that ... He's reviewed ... The judge asked him, do you understand that it included a proposed cooperation agreement? He says yes. Do you understand that the guidelines in that agreement are 135 to 168? That's 11 to 14. Do you understand that there's a minimum, statutory minimum sentence of 120 months? And he says yes. Do you understand that I won't have any discretion to go below that statutory minimum unless you accept this plea agreement? He says yes. Where do you get to the 360 in what you're reading to us now? Well, the court does not tell him that there's a possibility of 360. But it seems to me it's implicit in the fact that this is a plea bargain that his exposure is somewhat higher than 135 to 168. We also know that at the end of the ... Maybe it's higher. Right. But 360 is double. But I don't think we have to show that his attorney even knew that it could be as high as 360. We know that it could be higher. At the end of this proceeding, there's a discussion about the likelihood that there's going to be a superseding indictment. So no, nobody knows whether additional drug quantities are going to be alleged. We do know that it is ... Well, the superseding ... That's not exactly true because the prosecutor knows. The prosecutor knows what kind of enhancement they're going to file, so they know. And the part about the superseding indictment was that if you reject the plea agreement or that even if you accepted the plea agreement, they could still file additional charges on these same transactions. No, if he accepted the plea agreement, that would have been the end of it. Yeah, that's what I thought. But if he rejected the plea agreement, there was a trial date, which was only three weeks hence. Okay, so you're saying that he knew that if he rejected it, all sorts of bad things might happen that he couldn't control. But let me ask you about the tenure, and maybe this is why I was confused with your adversary. Is there any basis for saying that there had earlier been a tenure deal that was rejected? Is just his own statement in the complaint? That's correct. It's his own statement in the 2055 petition. Nobody else says so, the prosecutor, et cetera. No. And then the 14 to 17 that I was confused about, that was the deal that he ultimately signed later on. No, he never signed a plea. He went to trial. Okay. His brother ultimately signed the plea deal for 15 years. The brother got 15 years, okay, that's why I was confused, thank you. But when he was represented by his next attorney, there was another offer. It was for more time. And he rejected it. And he rejected that one as well. I also want to note that when Mr. Loeb was withdrawing from representation after this, there was a hearing on the record. And McLeod said, well, yes, I've been talking to other attorneys. We're having a breakdown in the attorney-client relationship. I've been talking to other attorneys because he's not preparing hard enough for my trial. He never says because he promised to talk to me and explain the plea agreement that we had that hearing about that he didn't explain to me enough before that hearing. In fact, not in any of these 2255 documents, the original petition or the addendum, does he ever explain why he went in front of Judge Stee and answered all of those questions saying that he discussed the plea agreement with his attorney. Why? Because the lawyer said, hey, you better keep saying yes if you want to in fact reject the plea agreement. He never says that. His appellate attorney in his principal brief says that, but McLeod never says that's the explanation. McLeod himself never said that my attorney was standing there whispering in my ear that I need to say yes to those questions. And did the lawyer say during that hearing that, Judge, I'm having difficulty communicating with my client because he hasn't paid me and I can't communicate because he hadn't forked over my fee? Does that ever come out on the record? The lawyer did cite the ethical rule about not being paid and not having to continue representing the client when you're not paid. So I think... He said that at the hearing? He said that in his motion to withdraw. That was later, right? That's different than the hearing, but I think even in his, I believe it's the reply brief, Mr. McLeod says that Loeb didn't, he repeats again that Loeb didn't have a meeting with him before that January status hearing and that he promised to make an appointment to talk to him about it later. And he says, due to a lack of payment, there was a breakdown in communication. That's in the written submission? That's in his right, 265, the reply brief. And then he complains about his later two attorneys, Waskey and Cripps. But he never says that Loeb refused to discuss it with him because he owed him $15,000 until he finally files this addendum, which is more than almost a year after he files his initial 2255. I find that there are things, I guess, on either side, the counsel and the defendant, that are not fully explicated right there in that record. And the reality is we know that, which gets back to my point earlier about your statement that certain things were not inconsistent with the record. I think we have to look at the record and we have to draw reasonable inferences from that record and make a determination within the confines of the law here. And as counsel Opps had said, the standard for a hearing is fairly lenient here. I'm not saying that this person has met it or even if they have, that they've met the prejudice prong, but I just want to be clear that the record is what it is and there are omissions in that record. That wasn't really a question. That was just me musing. I understand. No worries. Well, let me ask you this because obviously I've been confused a couple of times. I want to make sure I get this right. At page 11 of the blue brief, your adversary says that McCloyd learned for the first time the government had made him a formal written plea offer of 11 to 14 years and that was the subject of the January 13th hearing. Well, you refute that by saying look at the transcript of the hearing. And then it says upon reviewing additional materials, he learned that the government later made him a second plea offer and that seems to allege that he never knew about that one. Do you have a response to that? That's not true either. That was one of the claims in the 2255. That was adjudicated. Well, how do we know it's not true? I mean, you may be right. Do I remember which? I know that... And that second offer is where I got the 14 to 17. That's why I got the time sequence wrong, but at least according to the brief, it's an allegation that there was this second offer that he never knew about and wouldn't that alone be enough to get you a hearing? Well, for one thing, that's not within the Certificate of Appealability because it was raised in the 2255, but that was the one that he complained about with Mr. Waskey. I mean, basically he says that he didn't know about any plea offers until after trial when he saw his discovery. Okay. But clearly there was this hearing. We've talked about the nature of it. There was not a similar hearing about the second plea offer. There's not a refutation from the lawyer. Mr. Waskey. Whatever. But I'm sure the record conclusively refuted the notion that he didn't know about that hearing. Okay. I see. All right. Thank you. Does the Court have other questions? One other thing I wanted to mention. I don't believe that his lawyer had to know or to be able to explain to him that his exposure ultimately would be 30 years. I think his lawyer needed to be able to explain to him that this was a favorable deal and there's no reason to think he didn't. In fact, he tells the judge that he did. But along those lines, defendant's initial petition admits that he sat through a reverse proffer with the prosecutor and the DEA agent. Most of the co-defendants had agreed to plead guilty by then. He says himself that he had sat through this reverse proffer. So one should assume that he had a pretty good idea what the evidence was against him before that offer was made. When you say that the lawyer didn't have to advise him of the, you might say, the actual consequences, he just had to give him good yes or no advice, is there some cases that say that? In other words, it sounds like you're saying, okay, there are all these considerations and the lawyer carefully thought about the considerations and gave him the right advice, but he didn't tell him all the considerations. And that seems kind of odd to me because you would think effective assistance means not only telling him what he ought to do, but telling him why you're telling him that. I think the case law says that it's not necessary to know what the ultimate guidelines would be. Do you have a case for that? I don't. All right, we can look it up. But I also think that the record shows that this client wasn't going to plead guilty no matter what. I mean, if you look at the excerpt of the grievance response from his second or third I mean, that's a reasonable inference for you to draw. The question is, though, does that conclusively show that he would have rejected a plea offer if he had been fully advised by his lawyer of the consequences and the risk? And that's what an evidentiary hearing is supposed to sort out, and that wasn't done here. Okay. Anything else? Thank you, counsel. You have your three minutes for rebuttal, Ms. Pei. Thank you, Your Honor. I'd just like to begin the rebuttal by responding briefly to the government's argument just a few moments ago that a lawyer only needs to advise about basically a yes-take-it-or-no-reject-it sort of advice about a plea offer. And there's actually a case law that's precisely to the contrary. That's this Court's decision in Smith v. United States, 348 F. 3rd 545, Sixth Circuit, 2003. And in that case, the Court quite clearly set out the responsibilities of a lawyer to advise the defendant about the likely sentencing guidelines that would apply. And here I'd also like to clarify that at the reverse proffer, the government revealed overwhelming evidence about the charges that should have indicated to Mr. Loeb that Mr. McLeod would be likely facing a 30-year-to-life sentence based on the quantities of drugs that were at issue here. The second point I'd like to make is that Mr. McLeod has testified unequivocally that he would have accepted this 11- to 14-year plea offer with cooperation had he been adequately informed and advised about it. And that testimony is not inherently incredible. In fact, it's maybe helpful to bear in mind that if Mr. McLeod had accepted the plea deal and had cooperated, today he might be halfway through his sentence by now. But instead, he's facing more than two decades more of imprisonment. When you say he testified, is this from the complaint or what? That's in his affidavit, yes. And under this Court's case law, that's the Griffin case, that's enough to obtain an evidentiary hearing. And in addition to the fact that there's this, there's the very significant disparity in the sentencing under the plea agreement and his exposure at trial. So once again, the issue before this Court is very narrow. It's only whether Mr. McLeod is entitled to an evidentiary hearing under Section 2255B. And as Judge Donald noted, there are questions and things on both sides here, and that's precisely why we need an evidentiary hearing. It's a low bar for this petitioner to meet, and we have easily met the standard for an evidentiary hearing. And so unless this Court has further questions, appellant respectfully requests that the Court reverse and remand for further proceedings. Okay, thank you counsel. The case will be submitted, and the clerk may adjourn court.